IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

| | |
|---|---|
| ROBERT GEDDINGS<br>ADC #122687 | PLAINTIFF |
| V.    Case No. 4:23-CV-01083-JM-BBM | |
| BLAKE CRINER, C.O., Corporal, Tucker<br>Unit, ADC | DEFENDANT |

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody, Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Moody may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

### I.   INTRODUCTION

On November 16, 2023, Plaintiff Robert Geddings ("Geddings"), an inmate at the Tucker Unit of the Arkansas Division of Correction ("ADC"), filed a *pro se* Complaint pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. (Doc. 2). After the Court screened Geddings's Complaint in accordance with the Prison Litigation Reform Act, Geddings was allowed to proceed with his individual-capacity excessive-force claim

against Correctional Officer Blake Criner ("Criner"). (Docs. 4, 5). Geddings requests monetary damages in the amount of $1,000,000. (Doc. 2 at 4).

On October 21, 2024, Criner filed a Motion for Summary Judgment, a Brief in Support, and a Statement of Undisputed Material Facts.[1] (Docs. 32–34). On October 30, 2024, the Court directed Geddings to file a response to the Motion for Summary Judgment on or before November 20, 2024. (Doc. 37). The Court advised Geddings that, if he did not do so, all of the facts in Criner's Statement of Facts would be deemed undisputed by him. *Id.* at 2; *see* LOCAL RULE 56.1(c) ("All material facts set forth in the statement filed by the moving party pursuant to paragraph (a) shall be deemed admitted unless controverted by the statement filed by the non-moving party"); *Jackson v. Ark. Dep't of Educ., Vocational & Tech. Educ. Div.*, 272 F.3d 1020, 1027 (8th Cir. 2001) (holding, pursuant to Local Rule 56.1(c), a plaintiff who failed to respond to the motion for summary judgment "forfeited her ability to contest the facts presented" by the defendant). To date, Geddings has not filed a response, and the time for doing so has expired.[2]

After careful consideration of the record, the Court recommends that Criner's Motion for Summary Judgment, (Doc. 32), be granted.[3]

---

[1] On March 27, 2024, Criner filed a Notice that he would not be seeking summary judgment on the issue on exhaustion. (Doc. 14).

[2] Geddings's verified Complaint, however, must be "treated as the equivalent of an affidavit for summary judgment purposes." *Williams v. York*, 891 F.3d 701, 703 n.2 (8th Cir. 2018) (citing *Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 682 (8th Cir. 2012)). Furthermore, all of the facts in the Complaint must be accepted as true. *Id.* (citing *Wise v. Lappin*, 674 F.3d 939, 941–42 (8th Cir. 2012) (per curiam)).

[3] Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 249–50 (1986). The moving party bears

## II. FACTUAL BACKGROUND

On August 11, 2023, at approximately 9 a.m., Geddings was escorted to the infirmary in a wheelchair.[4] (Doc. 2 at 4; Doc. 34 at 1, ¶¶ 1, 3). In his verified Complaint, Geddings alleges that, when he arrived at the infirmary, Criner "came behind me while my hands were still cuffed behind my back & jerked me up to a standing position." (Doc. 2 at 4). Geddings claims that this incident caused him a "sharp pain in [his] neck & back shoulder." *Id.* Conversely, Criner states in his Statement of Undisputed Facts, and provides surveillance video confirming, that once Geddings reached the infirmary, Criner and an unnamed officer assisting with Geddings's escort "gently lift[ed] Mr. Geddings out of the wheelchair, each hooking an arm under either of Mr. Geddings' arms and lifting him at a steady rate." *Id.* at 1, ¶ 7; (Doc. 39 at 09:08:10–20).

While at the infirmary, Geddings walked and stood unassisted multiple times. (Doc. 34 at 2, ¶¶ 8–11); (Doc. 39 at 09:08:30–09:11:15). Eventually, Geddings was escorted to an examination room out of camera view. (Doc. 39 at 09:11:15–09:11:20).

It was while Geddings was in the examination room that Criner, for the second time, "came up behind" Geddings and "snatched" him to his feet. (Doc. 2 at 4, 7). As Geddings confirmed in his deposition testimony, this second interaction occurred around 9:15 a.m.,

---

the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party must present specific facts demonstrating that there is a material dispute for trial by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" *See* Fed R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).

[4] Geddings testified that he does not have any condition requiring the use of a wheelchair. (Doc. 32-2 at 8–9) ("They provided one because they was running behind and they was trying to hurry up and get through.").

3

while Geddings and Criner were in the examination room and out of camera view. (Doc. 32-2 at 22:1–23:10) (testifying that he was sitting in a chair in the exam room off camera when Criner "jerked" him up, and it occurred when the White officer, who was on camera, stood up from his chair); (Doc. 39 at 09:15:05) (showing the White officer standing up from his chair).

Criner put forth no evidence regarding what occurred in the examination room and did not address it in his briefing or Statement of Undisputed Facts. *See* (Doc. 33 at 5–6; Doc. 34 at ¶¶ 11–12). Accordingly, the Court accepts the sworn statement in Geddings's Complaint regarding this interaction, which reads: "Nurse Bradley conducted my sick call. While in there[,] Ms. Pratt asked me to fill out some paper work. Before I could stand C.O. Criner unannounced came up behind me & snatched me up to my feet again causing more pain." (Doc. 2 at 4). In his deposition, Geddings reiterates that, "without warning or notice," Criner came up behind him in the examination room and "snatched" him to his feet. (Doc. 32-2 at 6:10–11). Geddings told Criner, "you just hurt my shoulder, man," but Criner only smirked and removed Geddings's handcuffs so he could complete his paperwork. (Doc. 32-2 at 6:12–18).

Following his examination and after completing paperwork, Geddings walked back into camera view. (Doc. 39 at 09:28:09). Criner held the wheelchair in place, and Geddings sat down on his own accord. (Doc. 34 at 2, ¶ 15); (Doc. 39 at 09:28:20–09:28:25). Criner "slowly roll[ed]" Geddings from the infirmary. (Doc. 34 at 2, ¶ 16); (Doc. 39 at 09:28:28–09:28:33).

## III.    DISCUSSION

Criner argues in his Motion for Summary Judgment that he is entitled to qualified immunity. Qualified immunity protects government officials from personal liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To overcome the defense at the summary judgment stage, Geddings must demonstrate: "(1) a deprivation of a constitutional right, [that was] (2) … clearly established at the time of the deprivation." *Robbins v. City of Des Moines*, 984 F.3d 673, 678 (8th Cir. 2021).

Whether qualified immunity applies to the case at hand is a question of law, not fact, for the court to decide. *Kelsay v. Ernest*, 933 F.3d 975, 981 (8th Cir. 2019). The Court may address either inquiry first. *See Duffie v. City of Lincoln*, 834 F.3d 877, 832 (8th Cir. 2016). Criner is entitled to qualified immunity should *either* prong be decided in his favor. *Watson v. Boyd*, 2 F.4th 1106, 1112 (8th Cir. 2021) (citations omitted). The Court will consider first whether Geddings was deprived of a constitutional right, as that issue is dispositive.

Geddings alleges that he experienced physical pain after being "jerked" or "snatched" out of his wheelchair twice by Criner. (Doc. 2 at 4). The Eighth Amendment protects prisoners from "unnecessary and wanton infliction of pain." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). To state an excessive-force claim under the Eighth Amendment, a prisoner must prove that the defendant used force "maliciously and sadistically to cause harm" rather than in "a good-faith effort to maintain or restore discipline." *See Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010); *Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017).

5

The relevant factors that must be considered when making this determination are: (1) the "objective need for force"; (2) "the relationship between the need and the amount of force that was used"; (3) the "threat reasonably perceived by the [defendant]"; (4) "any efforts by the defendant to temper the severity of the forceful response"; and (5) "the extent of the [plaintiff's] injuries." *Ward v. Smith*, 844 F.3d 717, 721–22 (8th Cir. 2016) (quoting *Treats v. Morgan*, 308 F.3d 868, 872 (8th Cir. 2002)); *see Jackson*, 866 F.3d at 974.

However, as a threshold issue, the Court must consider whether the force used was more than *de minimis* or "repugnant to the conscience of mankind." *Wilkins*, 559 U.S. at 37–38; *see Webster v. Saint Louis Cnty.*, No. 24-1127, 2025 WL 1187171, at *1 (8th Cir. Apr. 24, 2025) (considering pretrial-detainee excessive-force case, stating that the *de minimis* nature or repugnance of the force is a threshold matter). "An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim. *Wilkins*, 559 U.S. at 38. Geddings claims of being "jerked" and "snatched" up from his chair fall squarely in this *de minimis* category.

The first instance when Geddings is allegedly "jerked" from his wheelchair is caught on camera. (Doc. 39 at 09:08:10–20). Even though all evidence is to be examined in the light most favorable to Geddings, the surveillance footage speaks for itself. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (holding that when undisputedly reliable video footage captures the relevant events, the evidence should be viewed in "the light depicted by the videotape."). The video shows Geddings being *helped* from his wheelchair by Criner and another guard, presumably because Geddings's hands and feet were shackled. (Doc. 32-2 at 7:14–22). While there is perhaps some *minor* jostling as the two guards lift Geddings, it

6

appears to be nothing more than an awkward movement to steady Geddings as the wheelchair slips out from beneath him. (Doc. 39 at 09:08:10–20). Based on this uncontroverted surveillance footage, no reasonable jury could find that the force used was anything but *de minimis*. Accordingly, Geddings is entitled to qualified immunity on the first use of force.

But each use of force must be considered, in turn. *See Blazek v. City of Iowa City*, 761 F.3d 920, 923 (8th Cir. 2014) (describing and analyzing each "discrete use of force" as a separate consideration). And the second use of force was not caught on video.

Even so, Geddings's description of being "snatched" to his feet a second time mirrors the first alleged instance of force, in that Geddings testifies to have been "snatched" from his wheelchair in the same manner twice. (Doc. 32-2 at 5:23–24, 6:10–11). With regard to the second incident, Criner lifted Geddings out of his chair and uncuffed his hands so Geddings could sign paperwork. (Doc. 32-2 at 6:10–18). Even if Criner "snatched" Geddings to his feet, it is not the kind of force that is "repugnant to the conscience of mankind." *Wilkins*, 559 U.S. at 37–38. Moreover, when Geddings comes back into camera view, there is no "discernable injury" to him. *Id.* at 38; (Doc. 39 at 09:28:09–09:28:33).

Geddings complained of a "sharp pain" in his neck and back shoulder and testified that he continues to have "constant pain and shooting pains in [his] left arm and shoulder." (Doc. 2 at 4); (Doc. 32-2 at 27:6–18). However, he does not present any evidence to support these alleged injuries. *Anderson*, 477 U.S. at 257 ("[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment.").

7

In short, Geddings complains of two instances of *de minimis* force. As a matter of law, this is insufficient to make out an Eighth Amendment excessive-force claim. *Wilkins*, 559 U.S. at 37–38. Criner is, therefore, entitled to qualified immunity because, based on this record, Geddings fails to show a constitutional violation.

## IV.  CONCLUSION

Based on the record before the Court, the Court recommends that Geddings's remaining individual-capacity claim against Criner be dismissed with prejudice because Criner is entitled to qualified immunity.

IT IS THEREFORE RECOMMENDED THAT:

1. Defendant's Motion for Summary Judgment, (Doc. 32), be GRANTED.

2. Gedding's individual-capacity excessive-force claim be dismissed with prejudice.

DATED this 14th day of May, 2025.

*Benecia Moore*
_____
UNITED STATES MAGISTRATE JUDGE